UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
GLEN VETROMILE,

                Plaintiff,

        -against-

JPI PARTNERS, LLC,

                Defendant.
------------------------------------------------------------------ X

: 07 Civ. 11032 (KMK)


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

*Greenfield Stein & Senior, LLP*
*600 Third Avenue, New York, N.Y. 10016*
*(212) 818-9600*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I.   THE EXPRESS TERMS OF THE AGREEMENT AT ISSUE DEMONSTRATE
     THAT VETROMILE DID EARN AND IS ENTITLED TO THE PAYMENTS
     SOUGHT ........................................................................................................................... 1

II.  VETROMILE IS ENTITLED TO SEVERANCE ............................................................. 6

CONCLUSION ............................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

Allison v. Fundamental Brokers Inc., 1991 U.S. Dist. Lexis 4150 (S.D.N.Y. 1991) ..................... 3

Hainline v. General Motors Corp., 444 F.2d 1250 (6th Cir. 1971) ............................................... 4

Harden v. Warner Amex Cable Communications, Inc., 642 F.Supp. 1080, 1096
    (S.D.N.Y. 1986) ....................................................................................................................... 4

Leighton v. New York, Susquehanna & Western Railroad Co., 455 F.2d 389 (2d Cir.), cert.
    denied, 406 U.S. 920 (1972) ................................................................................................... 4

Lessley v. Hardage, 727 P.2d 440, 448 (Kan. 1986) ..................................................................... 4

Pillois v. Billingsley, 179 F.2d 205, 207 (2d Cir. 1950) ................................................................ 4

Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 565 (2d Cir.), cert. denied, 525
    U.S. 963 (1998) .................................................................................................................... 6-7

Truelove v. Northeast Capital & Advisory Inc., 95 N.Y.2d 220, 715 N.Y.S.2d 366 (2000) ......... 3

**Other Authorities**

Restatement (Second) of the Law of Contracts §253(2) ................................................................ 2

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
GLEN VETROMILE,
                                                    :  07 Civ. 11032 (KMK)
                         Plaintiff,
                                                    :
            -against-
                                                    :
JPI PARTNERS, LLC,
                                                    :
                         Defendant.
------------------------------------------------------------------ X
```

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

This memorandum is submitted on behalf of plaintiff Glen M. Vetromile in further support of his cross-motion for summary judgment.

JPI fails to come to grips with Vetromile's principal argument – i.e., the argument that the contract at issue in this case simply does not contain the various requirements which JPI seeks to read into it. As a matter of straightforward contract interpretation and application, Vetromile's claims should be upheld.

### ARGUMENT

### I.
### THE EXPRESS TERMS OF THE AGREEMENT AT ISSUE DEMONSTRATE THAT VETROMILE DID EARN AND IS ENTITLED TO THE PAYMENTS SOUGHT

**The Annual Bonus**

JPI contends that the phrase: "the Participant must be employed by the Company" must be read as requiring that Vetromile be employed for an entire year in order to be eligible for a bonus payment for that particular year (JPI Mem. at p.3).

The quoted language, however, simply does not contain any such requirement. It does not say that the employee must be employed for an entire year in order to be entitled to a bonus and it does not say that an employee whose employment is terminated before the end of a full year will not be entitled to a bonus.

JPI contends that the only way that the language can be given meaning and effect, however, is by reading it as requiring that the employee be employed for an entire year in order to be eligible for a bonus for that year. JPI, however, is incorrect. The language can be given meaning and effect by reading it in the way Vetromile suggests – that is, by requiring that the Participant must be employed by the Company at some time during the year in question in order to be entitled to a bonus for that year.

Certainly, if an employee voluntarily resigned from his employment during the year, the Company could maintain that the employee had repudiated his employment agreement and was not entitled to the benefits of that agreement, including the payment of a bonus for the year in question. See Restatement (Second) of the Law of Contracts §253(2) ("Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance).

Where, however, as here, the Company itself terminates the employee's employment without cause, then, where the employee was employed for a portion of the year, there is no legal reason to deny him the bonus (because he has not repudiated the employment agreement), and the contract contains no language requiring such a result.

JPI relies heavily on cases where the plaintiff-employee resigned from employment (e.g., Truelove v. Northeast Capital & Advisory Inc., 95 N.Y.2d 220, 715 N.Y.S.2d 366 (2000); Allison v. Fundamental Brokers Inc., 1991 U.S. Dist. Lexis 4150 (S.D.N.Y. 1991) (JPI Mem. at pp. 5-6)). For the reasons just stated, however, cases where the employee resigned are not relevant here, and JPI's reliance on such cases is misplaced.

JPI also cites cases upholding the validity of bonus agreements "which include requirements that an employee be employed on a certain date in order to be eligible for a bonus" (JPI Mem. at p. 4), but the contract language at issue in this case contains no such wording and creates no such requirement.

Apart from the express language of the contract, considerations of reason and fairness also support Vetromile's position. Where an employee has worked for a portion of the year with the expectation that he is earning a bonus, but then is terminated without cause from his employment, it is unlikely that the employee will be able to obtain new employment to replace the bonus opportunity for that year. In other words, where a portion of the year has already passed, a new employer is unlikely to be prepared to offer the employee a full bonus for the year in question.

Vetromile does not, as JPI contends (JPI Mem. at pp. 6-7), seek to alter the at-will nature of his employment. He does not contest his firing, but merely seeks to collect the bonus pursuant to the terms of his agreement with JPI.

Finally, Vetromile does not dispute that JPI did indeed retain discretion with regard to the bonus (JPI Mem. at pp. 7-9). Vetromile maintains, however, that

"discretion" does not mean the same thing as utter license to act arbitrarily and capriciously. Instead, Vetromile has cited authorities indicating that discretion means the contrary – it means acting in a reasonable manner that is not arbitrary and capricious. Under the circumstances, the denial of a bonus to Vetromile – where (a) he performed substantial services, (b) he was terminated without cause and (c) JPI deprived him of the opportunity to perform additional services which he was ready, willing and able to perform – was indeed arbitrary and capricious.[1]

Discretionary bonus plans have been held to give rise to contractual obligations, see Harden v. Warner Amex Cable Communications, Inc., 642 F.Supp. 1080, 1096 (S.D.N.Y. 1986), including a duty not to act arbitrarily, capriciously or in bad faith, see Pillois v. Billingsley, 179 F.2d 205, 207 (2d Cir. 1950); Leighton v. New York, Susquehanna & Western Railroad Co., 455 F.2d 389 (2d Cir.), cert. denied, 406 U.S. 920 (1972); Hainline v. General Motors Corp., 444 F.2d 1250 (6th Cir. 1971), and, where a contract requires the exercise of judgment or discretion, the law implies that the judgment or discretion will be "honestly exercised and faithfully performed." Lessley v. Hardage, 727 P.2d 440, 448 (Kan. 1986).

In the present case, where Vetromile had worked for a portion of the year, had performed substantial services and made significant contributions to the Company's business, and was ready, willing and able to continue working for the balance of the year,

---

[1] Again, Vetromile does not contest his termination and does not assert that he was ready, willing and able to perform for purposes of attempting to obtain reinstatement to his employment. Instead, Vetromile asserts that he was ready, willing and able to perform in order to make it plain that (as is undisputed) he did not repudiate the employment agreement or his obligations thereunder and in order to distinguish those cases where employees resigned and were therefore held to have forfeited their right to a bonus.

the denial of his bonus cannot be said to have been an honest and faithful exercise of any discretion that JPI may have had with respect to the bonus.

**The Maritime Yards Payments**

With regard to the Maritime Yards Project, JPI continues to assert that the contract required Vetromile personally to perform certain services and to cause certain conditions to be achieved and fulfilled (JPI Mem. at pp. 9-12). Once again, JPI fails to refer to the actual language of the governing document (the Profit Participation Plan), and that document contains no language specifying or requiring that Vetromile personally perform certain services.

As Vetromile pointed out in his moving memorandum, the Project Participation Plan (at p. 1) refers to "projects in which you are a participant" and does not specify that an employee must perform particular services or achieve particular results in order to be entitled to payments.

Vetromile did not contend, as JPI asserts, that the Profit Participation Plan entitles him to payment because he was the originator of the transaction. Instead, Vetromile is entitled to payment because he was a participant.

Vetromile cited his role as the originator for the purpose of showing that he was indeed a participant and also for the purpose of showing that his participation was of the nature and extent that was contemplated between the parties when they entered into the employment arrangement. JPI cannot deny any of these facts and, accordingly, Vetromile is entitled to compensation with respect to the Maritime Yards transaction.

Vetromile does not deny that he did in fact originate the Maritime Yards transaction, a transaction which had been eluding JPI's grasp for many years and which in fact was the only transaction brought into JPI's New York office subsequent to its initial project (see Vetromile's Moving Mem. at p. 7). It should, however, also be noted that Vetromile provided substantial services above and beyond the origination of the transaction. As testified by Mr. Fowler, Mr. Fowler and Mr. Vetromile negotiated the transaction, Vetromile prepared numerous drafts of the memorandum of understanding, and that memorandum was in substantially final form when Vetromile left JPI. Many aspects of the due diligence work were performed by Mr. Vetromile personally and he also directed a staff of several people who performed due diligence work under his supervision (see Vetromile's Moving Mem. at p. 7). Again, while these particular efforts on Vetromile's part are not a prerequisite to his entitlement to the bonus payments, it is important for the Court to be aware that Vetromile's work was substantial and that JPI has attempted to mischaracterize it and make it seem that it amounted to nothing more than introducing his friend (Clay Fowler) to the firm (JPI).

## II.

## **VETROMILE IS ENTITLED TO SEVERANCE**

JPI does not deal with the ERISA basis for Vetromile's claim for severance but instead addresses only the contract law of the State of New York (JPI Mem. at pp. 13-14). Vetromile's claim for severance is, however, properly asserted under ERISA and, under ERISA, there is no requirement that Vetromile show that he entered into or continued his employment because of the availability of the severance pay. Cf. Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 565 (2d Cir.), cert. denied, 525

U.S. 963 (1998) (program to pay severance benefits may constitute ERISA employee welfare plan), cert. denied, 525 U.S. 963 (1998).

## CONCLUSION

The Court should grant summary judgment in favor of Vetromile on all of his claims.

Dated:   New York, New York
         April 30, 2009

                                      Respectfully submitted,

                                      **GREENFIELD STEIN & SENIOR, LLP**

                                      By: *Paul T. Shoemaker*
                                          Paul T. Shoemaker (PS-5388)
                                      600 Third Avenue - 11th Floor
                                      New York, New York 10016
                                      (212) 818-9600

                                      *Attorneys for Plaintiff Glen Vetromile*

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
GLEN VETROMILE,
                                                        :   Index No. 07 Civ. 11032 (KMK)
                        Plaintiff,
                                                        :   AFFIDAVIT OF SERVICE
            -against-
                                                        :
JPI PARTNERS, LLC,
                                                        :
                        Defendant.
------------------------------------------------------- X
```

STATE OF NEW YORK    )
                     :  ss.:
COUNTY OF NEW YORK   )

**JEAN OSTROW**, being duly sworn, deposes and says:

1. I am not a party to the within action, am over 18 years of age, and reside in Holliswood, New York.

2. On April 30, 2009, I served the within PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF"S CROSS-MOTION FOR SUMMARY JUDGMENT upon the following:

> Neil Sparber, Esq.
> FULBRIGHT & JAWORSKI L.L.P.
> *Attorneys for Defendant*
> 666 Fifth Avenue
> New York, NY 10103

by enclosing true copy thereof in a postpaid, properly addressed envelope and causing same to be placed in an official depository of the U.S. Postal Service within New York State.

_____
JEAN OSTROW

Sworn to before me this
30th day of April, 2009.

_____
Notary Public

NANCY E. GARFINKEL
Notary Public, State of New York
No. 41-50062716
Qualified in Queens County
Commission Expires December 28, 20_10_